# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT HUNTINGTON

JOHN A. KING, D.O.

    *PLAINTIFF,*

v.

Civil Action No. 2:05-0463

TEAYS VALLEY HEALTH SERVICES, INC.,
D/B/A PUTNAM GENERAL HOSPITAL;
**SERVE: CT CORPORATION SYSTEM**
    **707 VIRGINIA STREET EAST**
    **CHARLESTON, WEST VIRGINIA 25301**



FRANK L. MOLINARO, INDIVIDUALLY, AS
CHIEF EXECUTIVE OFFICER, AND AS A
MEMBER OF THE BOARD OF TRUSTEES OF
TEAYS VALLEY HEALTH SERVICES, INC.
D/B/A PUTNAM GENERAL HOSPITAL;
**SERVE: FRANK L. MOLINARO**
    **PUTNAM GENERAL HOSPITAL**
    **1400 HOSPITAL DRIVE**
    **HURRICANE, WEST VIRGINIA 25526**

GREGORY D. KELLY, D.O., INDIVIDUALLY, AS
PRESIDENT OF THE MEDICAL STAFF AND
AS A MEMBER OF THE BOARD OF TRUSTEES
OF TEAYS VALLEY HEALTH SERVICES. INC.
D/B/A PUTNAM GENERAL HOSPITAL;
**SERVE: GREGORY D. KELLY, D.O.**
    **PUTNAM GENERAL HOSPITAL**
    **1400 HOSPITAL DRIVE**
    **HURRICANE, WEST VIRGINIA 25526**

LEONARD FICHTER. D.O., INDIVIDUALLY, AND AS
CHIEF OF THE SURGERY DEPARTMENT OF
TEAYS VALLEY HEALTH SERVICES. INC. D/B/A
PUTNAM GENERAL HOSPITAL;
**SERVE: LEONARD FICHTER, D.O.**
    **3661 TEAYS VALLEY ROAD**
    **HURRICANE, WEST VIRGINIA 25526**

SCOTT DUFFY, I.D., INDIVIDUALLY, AND AS A MEMBER
OF THE MEDICAL EXECUTIVE COMMITTEE OF
TEAYS VALLEY HEALTH SERVICES, INC., D/B/A
PUTNAM GENERAL HOSPITAL;
**SERVE: SCOTT DUFFY, I.D.**
        **PUTNAM GENERAL HOSPITAL**
        **1400 HOSPITAL DRIVE**
        **HURRICANE, WEST VIRGINIA  25526**

DENNIS CUPIT, M.D., INDIVIDUALLY, AND AS A MEMBER
OF THE MEDICAL EXECUTIVE COMMITTEE OF
TEAYS VALLEY HEALTH SERVICES, INC., D/B/A
PUTNAM GENERAL HOSPITAL;
**SERVE: DENNIS CUPIT, M.D.**
        **PUTNAM GENERAL HOSPITAL**
        **1400 HOSPITAL DRIVE**
        **HURRICANE, WEST VIRGINIA  25526**

SEAN DICRISTIFARO, M.D., INDIVIDUALLY, AND AS
CHIEF OF MEDICINE AND AS A MEMBER OF THE
MEDICAL EXECUTIVE COMMITTEE, OF
TEAYS VALLEY HEALTH SERVICES, INC.
D/B/A PUTNAM GENERAL HOSPITAL;
**SERVE: SEAN DICRISTIFARO, M.D.**
        **PUTNAM GENERAL HOSPITAL**
        **1400 HOSPITAL DRIVE**
        **HURRICANE, WEST VIRGINIA  25526**

STEVE SMITH,. M.D., INDIVIDUALLY AND AS A
MEMBER OF THE MEDICAL EXECUTIVE COMMITTEE
OF TEAYS VALLEY HEALTH SERVICES, INC. D/B/A
PUTNAM GENERAL HOSPITAL;
**SERVE: STEVE SMITH, M.D.**
        **PUTNAM GENERAL HOSPITAL**
        **1399 HOSPITAL DRIVE**
        **HURRICANE, WEST VIRGINIA  25526**

*DEFENDANTS.*

## COMPLAINT

Comes now the Plaintiff, John A. King, D.O., by counsel, Robert W. Riley of the law

firm of Riley & Associates, PLLC and William D. Levine of the law firm of St. Clair and Levine

for his Complaint, and states as follows:

## I. PARTIES

1.        Plaintiff, John A. King, D.O., is a citizen and resident of Florida with a mailing address of 11310 South Orange Blossom Trail, Number 232, Orlando, Florida 32837 and maintained an orthopedic practice in Teays Valley, Putnam County, West Virginia, from November, 2002 through 2003.

2.        Plaintiff was at all pertinent times a physician duly licensed to practice medicine in the state of West Virginia as well as several other states and has engaged in the practice of medicine for approximately eighteen (18) years.

3.        Plaintiff has board certification in orthopedic surgery and anesthesiology and is a fellow of the American Association of Physician Specialists, ("AAPS").

4.        Plaintiff was, during the relevant period, a member of the medical staff of Defendant, Teays Valley Health Services, Inc. d/b/a Putnam General Hospital (hereinafter referred to as "Putnam General") and was granted credentials by Putnam General's administration and medical staff to practice his medical specialty consisting primarily of orthopedics and spine surgery. (Plaintiff was denied general Anesthesiology privileges).

5.        Teays Valley Health Services, Inc is a West Virginia Corporation having its principal place of business in Putnam County.  Putnam General is the only public hospital located in Putnam County, West Virginia.  Putnam General is a public agency and its actions are state actions subject to the provisions of the state and federal Constitutions and state and federal statutes by virtue of the fact that it is an organization operated and affected with the public interest, it is subject to public control by the West Virginia State Department of Health and other state health agencies and receives public financial assistance form state and federal agencies, including, but not limited to, state human services, Medicare, Medicaid and other related state

and federal agencies and enjoys a tax exempt status.

6.      Defendant, Frank L. Molinaro, (hereinafter "Molinaro") was at all relevant times the President of Putnam General and its Chief Executive Officer and was a resident of Putnam County, West Virginia. As such, he was responsible for the day-to-day operation of Putnam General and was a member of its Board of Trustees.

7.      Defendant, Gregory D. Kelly, (hereinafter "Kelly") was at all relevant times the President of the medical staff of Putnam General a/k/a Chief of Staff and as such, served as Chairman of the Executive Committee of the medical staff (herein after referred to as "Medical Executive Committee") and is a member of Putnam Board of Trustees.

8.      Defendant, Leonard Fichter, D.O., (hereinafter "Fichter") is the Chief of the Surgery Department of Putnam General and a member of its Medical Executive Committee.

9.      Defendant, Scott Duffy, M.D., (hereinafter "Duffy") is a member of the Medical Executive Committee of Putnam General.

10.     Defendant, Dennis Cupit, M.D., (hereinafter "Cupit") is a member of the Medical Executive Committee of Putnam General.

11.     Defendant, Sean DiCristifaro, M.D., (hereinafter "DiCristifaro") is the Chief of Medicine and is a member of the Medical Executive Committee of Putnam General.

12.     Defendant, Steve Smith, (hereinafter "Smith") is a member of the medial Executive Committee of Putnam General and a member of the Board of Trustees of Putnam General.

## II. JURISDICTION AND VENUE

4

13.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332a as complete diversity exists between the Plaintiff and all of the Defendants and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (a) as all of the Defendants reside in the state of West Virginia and at least some of them reside in this judicial district and the events giving rise to the claim occurred in this judicial district.

### III. FACTS

15.     Prior to the dates on which the matters complained of herein occurred, Putnam General promulgated and adopted certain medical staff bylaws (hereinafter referred to as "bylaws"), which regulated the granting, denial, suspension, revocation, and termination of medical and surgical privileges to licensed physicians and surgeons who sought to practice their profession by the treatment of patients at Putnam General.

16.     Attached as Appendix A to the bylaws, is a Fair Hearing Plan, which sets forth specifically the procedures by which adverse actions can be taken against a practitioner, or member of the medical staff.

17.     Putnam General acting by and through its appointed agents, servants and employees, some of whom were members of one or more medical staff committees, and the individual Defendants named herein, are responsible for the proper application and enforcement of the bylaws and fair hearing plan in a fair and impartial manner which is neither arbitrary, capricious, nor calculated to deprive those seeking or retaining medical or surgical privileges at Putnam General of due process or of their legal, procedural, common law or constitutional rights with reference to such privileges.

18.     Putnam General is a subsidiary of and/or related to Hospital Corporation of America (hereinafter "HCA"), which was a party to and bounded by the Corporate Integrity

5

Agreement ("Integrity Agreement") between the office of Inspector General of the Department of Health and Human Services and HCA. The Integrity Agreement entered into on the 14th day of December, 2000, by Thomas F. Frist, Jr., M.D., Chairman and Chief Executive Officer, HCA-The Healthcare company and Alan Yuspeh, Senior Vice President, Ethics, Compliance and Corporate Responsibility, HCA-The Healthcare Company, and Louis Morris, Assistant Inspector General for Legal Affairs, Office of Inspector General, US Department of Health and Human Services. This Corporate Integrity Agreement by its terms is effective eight years from the effective date and covers, in addition to HCA subsidiaries such as Putnam General, "any agent or other individual who furnishes healthcare items or services to any Federal healthcare program beneficiary at a facility owned or operated by HCA or any of its subsidiaries for which HCA or any of its subsidiaries claims reimbursement from any Federal healthcare program.

19.    Putnam General acting by and through its appointed agents, servants and employees, some of who are members of one or more medical staff committees, is responsible for the compliance with the terms and conditions of the Integrity Agreement.

20.    On or about October 24,2002, Plaintiff applied to Putnam General for medical staff privileges and was immediately granted temporary medical staff privileges.

21.    Following verification of the accuracy of information contained in Plaintiff's application, and upon receipt of physicians' references on Plaintiff's behalf, Plaintiff was granted permanent staff privileges effective February 6, 2003, through February 6, 2004.

22.    Inexplicably, the Plaintiff was not granted staff privileges for anesthesiology, and was denied a hearing on this issue.

23.    Plaintiff arrived at Putnam General in the month of November 2002.

24.     Plaintiff is trained in the use of the spine surgery instruments manufactured by Medtronics.

25.     Shortly after Plaintiff's arrival at Putnam General, a competing manufacturer of spine surgery instruments, EBI contacted Plaintiff and offered to train him in the use of EBI's spine surgery instruments. Plaintiff acted on this offer and found EBI spine surgery instruments to be both less expensive and of better quality than Medtronic's instruments and began using EBI instruments.

26.     In or about late March or early April, 2003, Chuck Short, an employee and agent of Putnam General whose job is Supply Chain Director, approached Plaintiff and upon information and belief, at the request of Molinaro and advised Plaintiff that DePuy Company, a medical instruments company and a competitor of both EBI and Medtronics, was the HCA "approved" supplier of orthopedic surgery instruments and that Plaintiff must immediately cease the use of EBI instruments and begin using DePuy instruments in his procedures.

27.     Plaintiff responded that in his opinion EBI instruments were both of better quality and less expensive by approximately One Thousand Dollars ($1,000.00) than the Depuy products per procedure. Plaintiff also expressed a concern for the safety of his patients if he was forced to use lower quality surgical instruments.

28.     Plaintiff then confronted Molinaro about whether the rebate fee or kickback was being paid to HCA or Molinaro personally from Depuy generated by Putnam General's use of DePuy instruments. Plaintiff also informed Molinaro that in Plaintiff's opinion, DePuy's instruments were inferior, more expensive and represented a risk to patients. Molinaro refused to respond to Plaintiff regarding these issues.

29.     The spine surgery procedures which Plaintiff was performing cost between

approximately Ten Thousand Dollars ($10,000.00) to Fifteen Thousand Dollars ($15,000.00) per procedure and Plaintiff believes that an additional One Thousand Dollar ($1,000.00) cost incurred by utilizing an inferior product was unethical and in violation of the Integrity Agreement and illegal and Plaintiff refused to engage in such a fraudulent scheme in an effort to enhance the profitability of HCA Hospitals including Putnam General.

30.     Molinaro, after being rebuffed in his efforts to enlist Plaintiff in a fraudulent scheme to defraud the federal government, the state government, private and public insurance companies through the utilization of more costly yet inferior products in exchange for a kick back, enlisted the assistance of Fichter, in an effort to persuade Plaintiff to reconsider his position to utilize the DePuy products. Fichter then confronted Plaintiff in an attempt to persuade him to use the DePuy products and Plaintiff refused to agree to do so.

31.     Upon information and belief, immediately thereafter, unbeknownst to Plaintiff and in retribution against the Plaintiff for his refusal to acquiesce in the demands of HCA and Molinaro and Fichter's demands that he violate federal law, Molinaro directed Cheryl Martin, Director of Quality Management of Putnam General to the American Medical Foundation, an organization with a reputation of being anti-physician in the business of medical staff peer review and advised "We have recently added a new procedure (spinal fusions) to our orthopedic services and upon recommendation from our Quality Improvement committee, an external peer review of this service has been requested." The letter further states, "I have reviewed the charts of all lumbar fusion procedures performed at our facility from 12-01-2002- 04-14-2003. I have attached a summary of the outcomes extrapolated from my review per our conversations. We will be submitting charts for twenty-one patients which have been selected according to the outcomes we have reviewed. Some of these patients have several admissions, therefore, we have

8

sent re-admits for reasons relating to the procedure."

32.     On or about May 23, 2003, the American Medical Foundation, by one Edward G. Dawson, M.D., transmitted via a letter to Defendant, Cheryl Martin, Director of Quality Control, Putnam General, a report regarding the selected cases which Ms. Martin had previously reviewed for submission to this peer review organization.

33.     Putnam General did not inform Plaintiff of Dr. Dawson's report or his conclusions.

34.     Upon information and belief, on or about June 5, 2003, defendant Chief Executive Officer of Putnam General called an emergency meeting of the Medical Executive committee of the Hospital by advising Gregory D. Kelly, M.D., President of the medical staff and Chairman of the Medical Executive Committee, that a meeting would be conducted as a result of an external peer review.

35.     Upon information and belief, those in attendance at the June 5, 2003, meeting included defendants Molinaro, Kelly, Fichter, Duffy, Cupit, DiCristifaro, Chief of Medicine and Steve Smith.

36.     Upon information and belief, immediately following this meeting, a letter was prepared Kelly addressed to the Plaintiff notifying him that "in accordance with Article 5.2 of the medical staff bylaws, your privileges at Putnam General Hospital have been summarily suspended effective immediately."  The letter purported to advise the Plaintiff of his rights pursuant to the Bylaws and the Fair Hearing Plan.  This letter directed any questions regarding the issue to Molinaro.

37.     Plaintiff immediately requested a fair hearing with the first available paper he had and hand delivered it to the Molinaro,

38.    Molinaro then filed a report with the National Practitioner Databank, Health Care Integrity and Protection Databank, via computer reporting Plaintiff was summarily suspended..

39.    Plaintiff then delivered to Molinaro, a letter expressing his concern for his patients as a result of the action taken by Putnam General and advised the hospital that it was "therefore responsible for providing continuity of care for [Dr. King's] patients."

40.    On June 10, 2003, Molinaro transmitted to Plaintiff a letter acknowledging Plaintiff's request for a fair hearing and attempted to summarize the process and rights of the Plaintiff. Molinaro's letter states, "The Executive committee of the Medical Staff has begun an investigation with regard to the matters that lead to the summary suspension. During the course of that investigation you will be consulted and asked to state your views, and respond to the concerns of the Committee. If the Committee ultimately recommends adverse action, then you will at that time have a right to a hearing on any such recommendation. Any ultimate decision after investigation is separate from the question of whether your privileges should remain suspended during that investigation. If, however, you wish to reduce the number or [sic] hearings and expedite the ultimate resolution of any concern regarding your practice, I will determine whether the current investigation can be finished on an expedited basis, so that there need only be a single hearing that addresses both the summary suspension and any ultimate recommendation of the MEC to the Board of Trustees." [emphasis added].

41.    On or about the 18th day of June 2003, Chuck Short, an employee, agent and specifically, the Supply Chain Director of Putnam General corresponded with one Bob Edwards, of R&B Medical Incorporated.

> This letter is a formal request for you to remove any items on our premises that are your property within one week of the receipt of this

10

correspondence. If you do not make known your intention to retrieve the items in question by the designated time frame, we will ship them to your attention with freight being charged to Wright Medical.

42.     On July 2, 2003, a hearing of the Fair Hearing Committee was conducted at which time the Defendants, Eakle, Klinestiver, Conaway, Phillips and Cochran, with Eakle serving as Chairman, conducted a hearing supposedly pursuant to the Fair Hearing Plan appended to the Bylaws. At this hearing, the Medical Executive Committee offered the testimony of two witnesses represented by its Chairman, Kelly. Dawson who testified via telephone expressed his opinion about twenty-one (21) out of the approximately five hundred (500) surgical cases were handled by Plaintiff during the seven months that he was on staff.

43.     Kelly's testimony at the Peer Review Hearing is particularly pertinent to Plaintiff's claims. Kelly testified that he did not request an outside review of the Plaintiff's cases. He stated it was his understanding that the request came through the Quality Management Committee. He testified that he was unaware of an apparently recent policy that new services were subject to peer review. He testified that he was not involved in the decision to send the Plaintiff's records out and that the first time he had seen the peer review report was the morning of the emergency meeting called by Molinaro. He indicated that the Plaintiff would be given an opportunity to come and meet with the Medical Executive Committee and discuss the issues.

44.     The Medical Executive Committee and the Hospital completed its case against the Plaintiff and rested, after which the Plaintiff called his first witness, a neurosurgeon who testified on behalf of the Plaintiff.

45.     Thereafter, the Fair Hearing Committee recessed until the matter could be rescheduled for the Plaintiff to present the balance of his case.

46.     Subsequently thereto, the Fair Hearing Committee based upon the evidence

11

presented by the Medical Executive Committee, citing paragraph D. Section 5.1-4 [Medical Executive Committee Action], in an unprecedented move, unanimously recommended to the Medical Executive Committee the unconditional restoration of Plaintiff's general orthopedic privileges but maintenance of suspension of his spinal surgery privileges pending completion of the investigation.

47.     Thereafter, on the following evening at approximately 6:15 p.m., the Medical Executive Committee met.   In attendance were Defendants Duffy, Kelly, Fichter, Cupit, DiCristifaro, Smith, Molinaro, and Director of Quality Control, Cheryl Martin.

48.     Thereafter, the Medical Executive Committee, ignoring the recommendations of the Fair Hearing Committee, refused to unconditionally restore Dr. King's general orthopedic surgery privileges.

49.     The refusal to follow the recommendations of the Fair Hearing Committee to the Board of Trustees was lead by Fichter, and seconded by Duffy.

50.     On or about the 3rd day of July, 2003, a report was made by Molinaro, to the National Practitioner Databank, Health Care Integrity and Protection Databank, via computer entry which set forth, "After considering hearing panel recommendations, the Medical Executive Committee agreed to lift suspension as to Dr. King's general orthopedic clinical privileges with the condition that all orthopedic procedures must have a second and he would not be placed on ER call schedule rotation. Clinical privileges as to spinal procedures are still suspended pending further investigation.

51.     Plaintiff was represented at the Peer Review Hearing by Robert W. Coleman, Putnam General was represented by Gordon H. Copland. Following the conclusion of the first day of the Peer Review Hearing, Coleman made numerous requests and demands on Copland to

schedule the continuation of the hearing. All of Coleman's efforts at resuming and completing the Peer Review Hearing were unsuccessful and, as a result, Plaintiff was stuck in a perpetual state of limbo.

52.     On or about the 8th day of August, 2003, an advertisement was placed in the Huntington Herald-Dispatch by the Charleston, West Virginia based law firm of Curry& Tolliver, PLLC, which states as follows: Medical Alert/Surgery by Dr. John A. King/One local hospital has canceled the medical privileges of Dr. John A. King/Call if you have any questions about your surgery by Dr. King/Only another doctor will really know/Dr. Jack. D. Tolliver, doctor & lawyer/Curry & Tolliver, PLLC/343-7200/1-888-566-5656 [emphasis added].

53.     Within days thereafter, an article appeared in the Charleston newspapers including the Charleston Daily Mail and the Charleston Gazette as follows: Medical Alert/Unnecessary surgery/Symptom the surgeon performed back surgery a the patient had worse pain ant disability/Diagnosis 90% of back problems disappear over time without surgery. Performing herniated disc surgery often enriches the surgeon and hurts the patient/Only another doctor will really know/Dr. Jack D. Tolliver, doctor & lawyer/Curry & Tolliver, PLLC Lawyers/343-7200/1-888-556-5656.

54.     Obviously, someone at Putnam General breached the confidentiality of the Fair Hearing Process and disclosed the allegations made against Plaintiff and the status of the disposition of those allegations.

55.     In fact, the Peer Review Hearing was never resumed and completed and out of frustration because he could not practice at Putnam General and believing Putnam General had no intention of ever resuming the Peer Review Hearing and restoring his staff privileges, Plaintiff, on advice of counsel, wrote to the West Virginia Board of Osteopathy on August 14,

2003, to request that he be allowed to voluntarily surrender his West Virginia license.

56.    Putnam General's wrongful and unjustified summary suspension of Plaintiff's orthopedic surgery privileges failed to comply with the Putnam General's bylaws as follows:

(a)    There is no basis stated or alleged, or specific reference to the activity or conduct which gave rise to the action taken by the Putnam General, specifically that of its Director of Quality Control in her undated request to an outside peer company requesting it to review twenty-six of approximately five hundred procedures conducted by Plaintiff in a seven month period.

(b)    The conclusions reached by the Medical Executive Committee were unjustified, and the recommendation by the Committee that Plaintiff's orthopedic privileges be suspended was unauthorized;

(c)    The action of the Medical Executive Committee summarily suspending Plaintiff's orthopedic privileges upon the recommendation of the outside peer review company was unauthorized;

(d)    There was no justifiable basis for the June 5. 2003, summary suspension of Plaintiff's privileges by the Medical Executive Committee:

(e)    There was no justifiable basis for the June 5, 2003, report to the National Practitioner Databank by the Defendant, Chief Executive Officer;

(f)    The June 5, 2003, summary suspension by Putnam General was improper because the evidence does not support the conclusion that such action was required to be taken immediately in the best interests of the patient care or safety in the hospital, or for the continued effective operation of the hospital;

(g)    The subsequent action of the Medical Executive Committee in rejecting the recommendations of the Fair Hearing Panel regarding the restoration of the Plaintiff's orthopedic

14

privileges was unjustified, improper and unauthorized;

(h)     The entire process violated Article V of the Putnam General Hospital bylaws of the medical staff.

(i)     The entire process violated Article VI of the Putnam General Hospital bylaws of the medical staff;

57.     Defendant's wrongful and unjustified summary suspension of Plaintiff's orthopedic and spinal privileges failed to comply with Putnam General's Fair hearing Plan as follows:

(a)     It violated Article II of the Putnam General Hospital Medical Staff Bylaws Fair Hearing Plan;

(b)     It violated Article III of the Putnam General Hospital Medical Staff Bylaws Fair Hearing Plan;

(c)     It is clear from the Medical Executive Committees rejection of the recommendation of the Fair Hearing Panel at the first phase of the Fair Hearing Procedure that regardless of the evidence and recommendations of the Fair Hearing Panel, the Medical Executive Committee will ignore the recommendations of the Fair Hearing Committee and take such actions no matter how arbitrary, capricious, unjustified, improper or unauthorized against Plaintiff as will cause him to have no choice but to leave Putnam General.

## COUNT I

1.     Plaintiff reasserts and realleges paragraphs 1 through 80 above as though set forth verbatim herein.

2.     Putnam General's wrongful action in summarily suspending Plaintiff's orthopedic and spinal privileges as set forth above was without justification and deprived Plaintiff of substantive due process.

15

## COUNT II

1.        Plaintiff reasserts and realleges paragraphs 1 through 80 above as though set forth verbatim herein.

2.        Putnam General's wrongful action in summarily suspending Plaintiff's orthopedic and spinal privileges as set forth above was without justification and deprived Plaintiff of procedural due process.

## COUNT III

1.        Plaintiff reasserts and realleges paragraphs 1 through 80 above as though set forth verbatim herein.

2.        Putnam General's wrongful action in summarily suspending Plaintiff's orthopedic and spinal privileges as set forth above constitutes breach of contract.

## COUNT IV

1.        Plaintiff reasserts and realleges paragraphs 1 through 80 above as though set forth verbatim herein.

2.        Putnam General's wrongful action in summarily suspending Plaintiff's orthopedic and spinal privileges as set forth above constitutes tortuous interference with Plaintiff's business relationships and contractual obligations.

**WHEREFORE,** Plaintiff demands

1.        Judgment against the Defendants jointly and severally in the amount of $20,000,000.00 for compensatory damages.

2.        An award of punitive damages against the Defendants jointly and severally in the aggregate sum of $20,000,000.00.

3.        A trial by jury of all issues so triable.

4.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,



William D. Levine, Esq.
St. Clair and Levine
717 Sixth Avenue
Huntington, West Virginia 25701
(304) 529-3030
(304) 529-3043 Facsimile

and

Robert W. Riley, Esq.
Riley & Associates, PLLC
320 Whittington Parkway, Ste. 117
Louisville, Kentucky 40222
(502) 425-7774
(502) 425-4777 Facsimile