IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOHN A. KING, D.O.,

           Plaintiff,

vs.                                       CIVIL ACTION NO. 2:05-cv-00463

TEAYS VALLEY HEALTH
SERVICES, INC., d/b/a
PUTNAM GENERAL
HOSPITAL, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion of defendant Teays Valley Health Services, Inc. (Putnam General) to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court **GRANTS** the motion to dismiss because the Plaintiff fails to state a claim for which relief can be granted.

I. STANDARD OF REVIEW

In ruling on the Motion to Dismiss, this Court is governed by the holding of the United States Court of Appeals for the Fourth Circuit in *Mylan Laboratories, Inc., v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993), *cert. denied* 114 S. Ct. 1307, 127 L.Ed. 2d 658 (1994), that:

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*See also Hurt v. United States,* 889 F. Supp. 248, 251 (S.D. W. Va.1995). The Court has

further held that, in light of the standard of review:

> a Rule 12 (b) should be granted only in very limited circumstances. The Supreme Court has explained that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

*Rogers v. Jefferson-Pilot Life Insurance Co.,* 883 F.2d 324, 325 (4th Cir. 1989) (*quoting Conley v. Gibson*, 355 U.S. 41, 48 (1957).

## II. FACTUAL AND PROCEDURAL HISTORY

"Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, **we assume the truth of all the facts alleged in the complaint** and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000) (emphasis added). Plaintiff, Dr. John A. King, ("Plaintiff" or "Dr. King") was granted permanent staff privileges at Putnam General on February 6, 2003. Complaint ¶21. Shortly after his arrival at Putnam General, Plaintiff was approached by Chuck Small, an employee of Putnam General, and informed that he needed to adopt the surgical equipment supplier used by Putnam General. *Id*. at ¶26. Following his encounter with Mr. Small, Plaintiff met with Frank Molinaro, Putnam General's CEO, and told him that the surgical equipment supplier used by Putnam General was both inferior and more expensive than the supplier used by Plaintiff. *Id*. at ¶¶27-28. After this meeting with Mr. Molinaro, Plaintiff alleges that Mr. Molinaro ordered Cheryl Martin, Director of Quality Management, to conduct an external peer review in retaliation for Plaintiff's refusal to switch surgical equipment providers. *Id*. at ¶31.

Immediately following the conclusion of this external peer review, of which Plaintiff was not informed, Plaintiff alleges that Mr. Molinaro called an emergency meeting of Putnam General's Medical Executive Committee. *Id*. at ¶¶32-34. After this meeting, Plaintiff received a letter from Dr. Gregory Kelly, Chairman of the Medical Executive Committee, which informed him that he had been suspended and advised him of his rights under the Bylaws and the Fair Hearing Plan. *Id*. at ¶36. Upon receipt of this letter, Plaintiff wrote a request for a fair hearing and hand delivered it to Molinaro. *Id*. at ¶37.

At the hearing on July 2, 2003, the Medical Executive Committee offered the testimony of two witnesses, and then Plaintiff called a neurosurgeon to testify on his behalf. *Id*. at ¶¶42-44. Once Plaintiff's first witness had testified, the Committee recessed until it could be rescheduled for the Plaintiff to present the remainder of his case. *Id*. at ¶45. Following the hearing, the Fair Hearing Committee recommended to the Medical Executive Committee that Plaintiff's general orthopedic privileges be restored but that the suspension of his spinal surgery privileges be maintained until the investigation was complete. *Id*. at ¶46. Despite this recommendation, the Medical Executive Committee refused to restore Plaintiff's general orthopedic privileges. *Id*. at ¶48.

After the Medical Executive Committee had decided not to restore any of Plaintiff's privileges, a Peer Review Hearing was held, where both parties were represented by counsel. Following the conclusion of the first day of this hearing, Plaintiff's counsel, Robert W. Coleman, made numerous requests to schedule a continuance of the hearing, but these requests went unanswered. *Id*. at ¶51.

Following the Peer Review Hearing, local law firms began placing ads in the local papers seeking plaintiffs to sue Dr. King. *Id.* at ¶¶52-53. Due to these advertisements, Plaintiff alleges that someone at Putnam General breached the confidentiality of the Fair Hearing Process. *Id.* at 54. At this point, the Peer Review Hearing had not been resumed, and Plaintiff, on the advice of counsel, voluntarily surrendered his medical license to the West Virginia Board of Osteopathy on August 14, 2003. *Id.* at ¶55. This action, alleging that Putnam General breached its bylaws in suspending plaintiff's surgical privileges, followed.

### III.  MOTION TO DISMISS PLAINTIFF'S CLAIMS

#### A. Due Process Claims

Under existing West Virginia case law, Dr. King's due process claims fail as a matter of law because Putnam General is not a state actor. The West Virginia Supreme Court has held that the actions of a private hospital do not constitute state action:

> [A] private hospital's actions do not constitute state action, and therefore, are not subject to scrutiny for compliance with procedural "due process," which is constitutionally required when there is state action.

*Mahmoodian v. United Hospital Center, Inc.*, 404 S.E.2d 750, 756 (W. Va. 1991). Therefore, both of Dr. King's due process claims fail because Putnam General is not a state actor, and hence, not subject to the due process standard.

#### B. Breach of Contract Claim

Dr. King's breach of contract claim fails as well because hospital bylaws do not constitute a contract between the hospital and its personnel. Regarding whether medical staff bylaws constitute a contract between the hospital and the physician, the West Virginia Supreme Court of Appeals made the following statement:

-4-

> Absent express language to the contrary, a hospital's medical staff bylaws do not constitute a contract between the hospital and its staff of physicians. However, when it is alleged that a physician is guilty of professional incompetence or misconduct, the hospital is bound by the fair hearing provisions contained in the medical staff bylaws.

*Kessel v. Monongalia County General Hospital Company*, 600 S.E.2d 321, Syl. Pt. 4 (W. Va. 2004). Thus, the medical staff bylaws are not a contract between the hospital and physician. In the present case, Dr. King has not alleged in his complaint that his contract expressly incorporates the bylaws into his contract. Because Dr. King has failed to allege that his contract with Putnam General expressly incorporates the bylaws into his contract and the bylaws alone do not create a contract, his breach of contract claim must be dismissed.

## C. Tortious Interference Claim

In his complaint, Dr. King has alleged that Putnam General has tortiously interfered with both contractual obligations and business relationships. The West Virginia Supreme Court of Appeals has articulated the following test for tortious interference:

> To establish prima facie proof of tortious interference, a plaintiff must show (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable for interfere that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial interest in the third party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors which show interference was proper.

*Garrison*, at Syl. Pt. 4 (quoting in whole Syl. Pt. 2, *Torbett v. Wheeling Dollar Savings & Trust Co.*, 314 S.E.2d 166 (W. Va. 1983). Therefore, to state a claim for tortious interference, Dr. King must

allege that Putnam General interfered in a contractual relationship between Dr. King and a third party.

On this count, Dr. King makes few allegations.  Putnam General correctly points out that this claim can only be against one of two parties: it can be against Putnam General for interfering in Putnam General's contract with Dr. King, or against Putnam General for interfering with Dr. King's relationship with his patients.  Def's Mot. To Dis, 12.  The claim fails in the first instance because plaintiff must show "an intentional act of interference by a party outside that relationship."  *Id.*  Dr. King cannot meet this element of the test because Putnam General is not a party from outside the relationship.  In fact, Putnam General is the party on the other side of the contract.

In the second instance, if the claim is against Putnam General for interfering with Dr. King's relationship with his patients, then it must fail as well.  Dr. King has not alleged that Putnam General has intentionally interfered with his relationships with his patients.

## IV.  CONCLUSION

The Court grants the defendant's motion to dismiss because Dr. King has failed to allege a viable cause of action.  More specifically, the Court dismisses the due process claims because Putnam General is not a state actor, and it dismisses Dr. King's breach of contract claim because Dr. King failed to allege in his complaint any contract that expressly incorporated the hospital's bylaws into his contract.  Additionally, Dr. King's tortious interference claim fails to state a cause of action because Dr. King has not identified any contractual relationship that he had with a third party.  For these reasons, the Court **GRANTS** the motion to dismiss.

The Court **DIRECTS** clerk to send a copy of this order to counsel of record and any unrepresented parties.

        ENTER:      February 7, 2006

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE